UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

VIOLET C. MURRAY,

        Plaintiff,

Case No. 1:04-CV-514

v.

Hon. Marianne O. Battani[*]

UNITED STATES POSTAL SERVICE,

**OPINION**

        Defendant.
_____/

This matter is before the Court on Defendant United States Postal Service's Motion for Summary Judgment. Plaintiff Violet C. Murray, proceeding *pro se*, has filed a one-page Response. Oral argument is unnecessary in light of the briefing. *See* W.D. Mich. L. Civ. R. 7.2(d). The briefing dictates that the Motion be granted.

**BACKGROUND**

This suit is brought under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and alleges that Defendant violated section 105 of FMLA, 29 U.S.C. § 2615, by firing Plaintiff. Plaintiff was employed by Defendant as a flat sorter operator at postal facilities in Grand Rapids, Michigan. Plaintiff was issued a letter of warning concerning her attendance on July 15, 1999. (Violet Murray Dep. 35-37 & Dep. Ex. 1.) This was followed by a notice of removal for undocumented absences which Defendant later reduced to a 14-day suspension. (Murray Dep. 37-38 & Dep. Ex. 2.)

---

[*]United States District Judge for the Eastern District of Michigan sitting as visiting judge.

On March 17, 2000, Plaintiff was issued a second notice of removal due to absence. (Murray Dep. 39 & Dep. Ex. 4.) The second notice of removal was again reduced–to a one-year suspension–pursuant to a pre-arbitration settlement of the parties, which was deemed a "last chance" agreement. (Murray Dep. 39-42 & Ex. 5 at 2.) One of the provisions of the agreement was that Plaintiff would provide documentation of inability to perform work when requested by the employer. (Murray Dep. Ex. 5 at 1.)

Plaintiff reported her absence from work on June 8, 2002 concerning both the June 8, 2002 and June 9, 2002 work days due to migraine headaches. Then the time and attendance supervisor–Anita Gleason–requested documentation of Plaintiff's inability to work. (Murray Dep. 57, 86-87.) On June 10, 2002, Plaintiff was able to work, but did not attend work because Gleason had required a medical certification which she did not have. (Murray Dep. 63-64, 87-88.) Plaintiff was not scheduled for regular work on June 11-12, 2002. On June 13, 2002, Plaintiff called Gleason and Gleason told Plaintiff to report to work the following day, but to submit documentation later. (*Id.* at 95-97.) Plaintiff again called in sick on June 14, 2002 due to a migraine headache, but reported to work the next day. (Am. Compl. ¶¶ 21-22.) Upon her return, Plaintiff did not complete paperwork to obtain standard leave for the missed dates. (Shawn Sereseroz Decl. ¶ 5.) Plaintiff was deemed absent without leave pending completion of the documentation. (*Id.* ¶ 6.)

In addition to Plaintiff's telephone contacts with Gleason, Plaintiff was sent correspondence on June 8, 2002, together with a FMLA leave packet, requesting submission of a FMLA medical certification within 15 days. (Am. Compl., Ex. 1.) When Plaintiff returned to work, she advised her work supervisor–Shawn Sereseroz–that she could not return the medical documentation for the

missed days until after she saw a specialist on July 2, 2002; Sereseroz agreed to wait until the appointment date for the documentation. (Am. Compl., Ex. 4 at 2.)

Theresa Smith, the FMLA Coordinator, sent Plaintiff a June 26, 2002 notice which stated that her absences of June 8-14, 2002 were not covered under FMLA due to lack of a medical certification. (Am. Comp., Ex. 2.) The letter also warned of disciplinary consequences. (*Id.*) Plaintiff failed to advise Smith of her July 2, 2002 appointment and failed to provide Smith with medical documentation.[1] (T. Smith Decl. ¶¶ 4-5.)

Plaintiff's supervisor Shawn Sereseroz returned from a scheduled vacation on July 11, 2002 and inquired of Plaintiff whether she had the medical documentation. (Sereseroz Decl. ¶ 8.) She did not. (*Id.*) Plaintiff told Sereseroz that the documentation was unavailable because the doctor had cancelled her appointment. (*Id.*) Sereseroz then asked for documentation of the canceled appointment as well as the original medical documentation. (*Id.*) When no documentation was provided, Sereseroz scheduled a pre-disciplinary meeting with Plaintiff and her union representative on July 28, 2002. No medical certification or other documentation was provided during the meeting. (*Id.* ¶ 9.) Sereseroz then completed a worksheet for Plaintiff's just cause termination. (*Id.* & Am. Comp., Ex. 4.) Following the meeting, Plaintiff left work due to stress. (Id. ¶ 10.)

Plaintiff was not allowed to return to work the following day until she obtained a medical clearance because she had left work due to stress. (P. Carlson Decl., Ex. B.) Plaintiff then obtained

---

[1] As explained in the arbitration award on Plaintiff's termination, Sereseroz and Smith both required notice from Plaintiff of her FMLA documentation and any requests for extension. Smith was the FMLA coordinator and the person to whom the FMLA documentation should have been directed in the first instance; Sereseroz was Plaintiff's direct supervisor and needed the information because he was responsible for determining whether Plaintiff was absent without leave. (*See* Schaut Decl. & Ex. C at 16-17.)

a nurse's medical certification on July 29, 2002 supporting her return to work, but did not obtain a medical certification concerning the June 8-14, 2002 absences. (Voss Dep., Ex. 2.) She was, however, permitted to return to work. (Def.'s Motion for Summ. J. 22.)

On August 5, 2002, Defendant issued to Plaintiff a final notice of removal due to failure to provide timely documentation of absences between June 8-14, 2002. (Am. Compl., Ex. 5.) Plaintiff then submitted doctor's notes[2] on August 8, 2002 as a medical certification and documentation of the cancelled appointment. (Am. Compl., Ex. 3.) Defendant did not reconsider its last notice of removal, though, due to the untimeliness of the certification. Plaintiff was removed from employment effective September 14, 2002. (Am. Compl., Ex. 5 at 1.)

Plaintiff grieved her termination and the grievance was resolved in favor of the employer. (M. Schaut Decl., Ex. C.) This action followed.

**STANDARDS FOR SUMMARY JUDGMENT**

Defendant's Motion is brought pursuant to Federal Rule of Civil Procedure 56. Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-

---

[2]Plaintiff was seen by John A. Voss, M.D. on August 8, 2002 for migraine headaches. (Voss Dep. 19.) Voss is a family practician and not a specialist. (*Id.* at 19.) Since Dr. Voss examined Plaintiff first on August 8, 2002, his only basis for concluding that she was ill on June 8-14, 2002 was Plaintiff's belated history. (*Id.* at 19, 23 & Dep. Ex. 6.) Dr. Voss wrote cursory notes as a medical certification on August 8, 2002. (Voss Dep. 18.)

movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323.

While this analysis assumes the adequacy of discovery, a party cannot oppose summary judgment based on vague generalizations that discovery has been inadequate. Rather, under the language of Rule 56 and the case law of this Circuit, a party urging that discovery has been insufficient must file a specific affidavit establishing that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Rule 56(f); *Klepper v. First Am. Bank*, 916 F.2d 337, 343 (6th Cir. 1990); *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995). In this case, Plaintiff has filed a one-page, unsworn statement which says that she is awaiting an unspecified discovery response. This statement is contradicted by defense counsel - who indicates that no discovery request has been received and no response to Plaintiff is outstanding. (Reply at 2) Plaintiff's filing fails to meet the Rule 56(f) requirements or otherwise show good cause for a briefing extension. No extension will be granted.

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**LEGAL ANALYSIS**

Plaintiff's Amended Complaint alleges various theories of why Plaintiff's discharge violated section 105 of FMLA: (1) Plaintiff lacked sufficient notice that the failure to document her inability to perform work within 15 days would result in her termination; (2) the 15-day requirement was not practicable; (3) Plaintiff did provide timely notification and medical certification; (4) Defendant in fact terminated Plaintiff for taking FMLA qualified leave; (5) Defendant's failure to rescind the termination after delayed medical certification was a violation of FMLA; (6) Defendant had in fact waived its documentation timeliness requirements; (7) Defendant acted inconsistent with internal FMLA policies; and (8) Defendant denied FMLA leave which was previously approved. (Am. Compl. ¶ 38.) As explained in this Opinion, the factual premises of these arguments are either refuted or unsupported by the record and the law does not otherwise support FMLA recovery.

FMLA provides an eligible employee with up to 12 weeks of leave when the employee suffers a "serious health condition" which prevents the employee from performing the employee's workplace functions. 29 U.S.C. § 2612(a)(1)(D). Under FMLA, the employer must restore an employee who takes such leave to the same or equivalent employment position, including benefits, at the expiration of the leave. 29 U.S.C. § 2614(a). The employer is also prohibited from either interfering with the exercise of FMLA rights, 29 U.S.C. § 2615(a)(1), or discriminating against an employee for the exercise of FMLA rights, 29 U.S.C. § 2615(a)(2). Thus, both the statute and the resulting case precedent distinguish between a FMLA interference claim and a FMLA discrimination claim. An interference claim generally speaking only requires proof that the employee requested FMLA leave to which the employee was entitled and was then denied FMLA

benefits to which the employee was entitled pertaining to the denied leave (such as return to work at the same or comparable employment and benefits). *See Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). Intentional violation of FMLA is not an element of a FMLA interference case. *See Hoffman v. Prof'l Med. Team*, 394 F.3d 414, 420 n.9 (6th Cir. 2005) (citing *Bachelder v. Am. West Airlines, Inc.,* 259 F.3d 1112, 1124 n.10 (9th Cir. 2001)). A discrimination claim, however, under section 105(a)(2) does require proof of an intent to retaliate for the exercise or attempted exercise of FMLA rights and is subject to the same analytical framework as used under Title VII of the Civil Rights Act of 1964. *Hoffman*, 394 F.3d at 422 (citing *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084-85 (6th Cir. 1994)). Both discrimination and interference claims are asserted in Plaintiff's Amended Complaint.

Federal regulation defines a "serious health condition" under FMLA as "an illness, injury, impairment, or physical or mental condition that involves . . . inpatient care . . . or . . . continuing treatment by a health care provider." 29 C.F.R. § 825.114(a). The "continuing treatment" category is generally limited to illnesses which create a "period of incapacity . . . of more than three consecutive calendar days . . . ." *Id.* However, the regulations also permit FMLA leave for episodic illness of less than three-plus days when triggered by "a chronic serious health condition." 29 C.F.R. § 825.114(a)(2)(iii). The regulations give the following examples: "asthma, diabetes, epilepsy, *etc.*" 29 C.F.R. § 825.114(a)(2)(iii)(C). The Court believes that migraine headaches may, in some cases, be both chronic and serious health conditions within the meaning of the regulations.

Chronic migraine is an internationally-recognized medical diagnosis and is distinct from non-chronic migraine.[3]  The regulatory language says as to a "serious health condition":

> Ordinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach and headaches *other than migraine* . . . are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave.

29 C.F.R. § 825.114(c) (emphasis added).  This definition language strongly suggests that migraine headaches are a serious health condition, at least in some severe cases, and may be a "chronic" severe medical condition when so diagnosed and treated.

Notwithstanding, to fall within the regulatory rubric for an episodic chronic illness of less than three-plus days,[4] Plaintiff is required to show a course of "periodic treatment" for the chronic condition under 29 C.F.R. § 825.114(a)(2)(iii)(A).  The present record shows nothing of the kind in that Plaintiff was not engaged in a course of periodic treatment for migraine as of the June illness.  Therefore, the record does not support a finding that Plaintiff qualified for FMLA leave for her June 2002 absences because of either a "serious health condition" or "chronic serious health condition."

Even assuming the contrary, Plaintiff cannot prevail on a FMLA interference claim on this record because the record establishes a certification defense on behalf of the employer.  By statute

---

[3]The International Headache Society recognizes two main kinds of migraine headaches: migraine with aura and migraine without aura, though patients sometimes suffer from both kinds of migraine.  International Headache Society, *International Classification of Headache Disorders*  introduction; § 1.1, notes & comments (2d ed. 2003) (commonly referenced as "*ICHD-2d*"). [References to the *ICHD-2d* are made pursuant to Federal Rule of Evidence 201(b)(2).]  The Society also recognizes a separate category for "chronic migraine" which entails both headache duration and frequency requirements.  *ICHD-2d* § 1.5.1, notes & comments.  The instant medical record including Dr. Voss' deposition testimony does not suggest any diagnosis of chronic migraine.

[4]As noted above, Plaintiff does not qualify for an illness of more than three-day duration because she admitted in her deposition testimony that she was prepared and able to return to work after the second day of the migraine.

and regulation, the employer may require a medical certification of a FMLA illness. *See* 29 U.S.C. § 2613(a); 29 C.F.R. § 825.305(a). In this case, Plaintiff was sent a request for a FMLA certification on June 8, 2002 which notified her that the medical certification must be returned within 15 days. This notice was sufficient under FMLA and the 15-day requirement is consistent with 29 C.F.R. § 825.305(a), which states that a 15-day deadline may be imposed "unless it is not practical under the particular circumstances to do so despite the employee's diligent, good faith efforts."

While the record does support a genuine issue of material fact as to whether more than 15 days was necessary given the initial scheduling of the July 2, 2002 appointment date and the cancellation of the July 2, 2002 appointment by Dr. Voss' office, the record cannot be read to support a further conclusion that a delay past the August 5, 2002 notice of termination date was required due to "diligent, good faith efforts" of the employee. Rather, the record shows that the employer was patient in waiting for the FMLA notice and was well within its rights to both deny the FMLA leave and determine that Plaintiff had not made a timely FMLA certification as of the August 5, 2002 notice of termination date (a wait of some 58 days).[5]

Likewise, Plaintiff cannot prevail on any claim for discrimination or retaliation as to the exercise or attempted exercise of FMLA rights. Under the Title VII discrimination framework, an employer may offer evidence to show that the adverse action was due to legitimate non-discriminatory reasons. *See Hoffman*, 394 F.3d at 422. Here the record establishes a legitimate non-discriminatory basis for the termination–Plaintiff had a long history of absenteeism and was in violation of her "last chance" agreement due to unexcused absences from work in June 2002.

---

[5] While a wait of that time period might be justified in extreme cases, such as when a person is seeking rare or distant specialist care, it is not defensible on the present record, which relates to doctor visits to a family doctor.

9

Plaintiff has failed to offer evidence to show that the employer's rationale was false or a pretext for discrimination. *See also Bones v. Honeywell Int'l Inc.*, 366 F.3d 869, 878 (10th Cir. 2004) (holding that no reasonable jury could find for plaintiff where the record established a history of absenteeism and tardiness which justified termination). The record evidence simply does not permit an inference of unlawful discrimination.

## **CONCLUSION**

Therefore, Defendant's Motion will be granted and summary judgment shall enter in favor of Defendant as to all of Plaintiff's FMLA claims.


Dated:  April 5, 2006
　　　　　　　　　　　　　　　　 /s/Marianne O. Battani
　　　　　　　　　　　　　　　　Hon. Marianne O. Battani
　　　　　　　　　　　　　　　　United States District Judge